**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ESTATE OF JOYCE SAVAGE, HOWARD ALVIN
SAVAGE, INDIVIDUALLY, AND AS THE ESTATE
REPRESENTATIVE,

                             Plaintiffs,

             - v -                             Civ. No. 1:17-CV-1363
                                                 (DJS)

ST. PETER'S HOSPITAL CENTER OF THE CITY
OF ALBANY, INC., ST PETER'S NURSING AND
REHABILITATION CENTER, INC., TRINITY HEALTH
CORPORATION, ST. PETER'S HEALTH PARTNERS,
and JOHN DOES 1 THROUGH 50,

                         Defendants.

**APPEARANCES:**                     **OF COUNSEL:**

SAVAGE LAW PLLC              DENISE LYNN SAVAGE, ESQ.
Attorneys for Plaintiffs
500 Carteret Street
Beaufort, SC  29902

MAGUIRE CARDONA, P.C.         AMANDA K. KURYLUK, ESQ.
Attorneys for Defendants           RANDALL J. EZICK, ESQ.
22 Clinton Avenue
Albany, NY 12207

**DANIEL J. STEWART**
**United States Magistrate Judge**

**DECISION AND ORDER**

**I.  FACTS AND PROCEDURAL HISTORY**

    In March of 2011, Joyce Savage was diagnosed with cancer.  Dkt. No. 16, Am.

Compl. (Federal), at ¶ 27.  In her treatment by Women's Cancer Care Associates, LLC and

Dr. Daniel Kredentser, she underwent chemotherapy and then a debulking surgery on August 8, 2012. *Id.* at ¶¶ 29-31. Mrs. Savage continued to bleed post-surgery, which resulted in her falling and being placed in ICU for three days. *Id.* at ¶¶ 39-42. She was then transferred to St. Peter's Nursing and Rehabilitation Center on August 19, 2011, where it is alleged that she continued to bleed, and suffered other related issues. *Id.* at ¶¶ 44-48. After being seen by a doctor at the Rehabilitation Center, she was transferred via ambulance to St. Peter's Hospital on August 22, 2011. *Id.* at ¶¶ 48-49. Mrs. Savage and her family then terminated Dr. Kredentser as her primary physician, had a "Hospitalist" appointed, and a series of tests and examinations were performed that disclosed that the uncontrolled bleeding was a result of a "nick" in her bladder which occurred during the August 2011 surgery. *Id.* at ¶¶ 57-59. Mrs. Savage continued to fight her cancer, but she ultimately passed away on March 19, 2013. *Id.* at ¶ 73.

In March of 2014, Plaintiffs commenced a state court action for medical malpractice which was dismissed without prejudice. Am. Compl. (Federal) at ¶ 77. In February of 2015, Plaintiffs commenced a second action in Albany County Supreme Court. Dkt. No. 28-5, First Amended Complaint (State); Am. Compl. (Federal) at ¶ 82; Dkt. No. 33-1, Prop. Sec. Am. Compl. (Federal) at ¶¶ 73 & 77. After the filing of that action, the parties engaged in discovery, which led to a series of discovery disputes, resulting in multiple motions before Supreme Court Justice Gerald Connolly. *See* Dkt. No. 25, Civil RICO Statement. In this federal action, Plaintiffs have pointed to the difficulties in obtaining complete and accurate medical records prior to, and during, that New York State personal injury action, as the crux

of their federal claim.  Am. Compl. (Federal) at ¶¶ 79-101.   For example, Mrs. Savage and

her husband provided HIPAA authorizations in 2012, 2013 and 2014 to St. Peter's Hospital

and St. Peter's Rehabilitation Center, but were said to have received incomplete responses

of fewer than 500, and then 950, pages of medical records.  *Id.* at ¶¶ 79-82.  After the state

malpractice action was commenced, discovery requests for complete medical records were

made, and responses again were deemed inadequate by Plaintiffs.  *Id.* at ¶ 87.  This resulted

in motions being filed and a series of state court decisions being issued.   On October 19,

2016, Judge Connolly issued an order compelling discovery and imposing monetary

sanctions against St. Peter's Hospital and its counsel.  *Id.* at ¶ 93.  A further order on a

spoliation motion was issued on July 13, 2017.  *Id.* at ¶ 96.  That decision, while going

through the history of non-disclosure, stated in pertinent part:

> Based upon the record before the Court, however, it has not been demonstrated
> that the St. Peter's Defendants were "... guilty of a deliberately evasive,
> misleading and uncooperative course of conduct or a determined strategy of
> delay that would be deserving of the most vehement condemnation" *Altu v.
> Clark*, 20 AD 3d 749, 751 (3d Dept 2005) such that the drastic remedy of
> striking of the pleadings is appropriate herein.  As previously stated, there has
> been no spoliation proven in the instant matter, and there is no evidence that
> the failure has prejudiced the plaintiffs' eventual ability to present their case.

Dkt. No. 25 at pp. 6-7.

Plaintiffs assert that complete medical records have never been provided,[1] and that the

failure to do so constitutes a "pattern of fraud by St. Peter's against the plaintiffs and . . .

Albany Supreme Court [which] was facilitated through the use of the United States postal

---

[1]  Plaintiffs' counsel indicated that production of the medical records has now exceeded 6,000 pages, but that
as to any remaining documents, they were either not created, or have been destroyed.  Dkt. No. 35-2 at pp. 7-8.

system and other mail organizations and via wire fraud (i.e. the internet/email)."  Am. Compl. (Federal) at ¶ 99.

On December 18, 2017, the Estate of Joyce Savage and Mr. Howard Savage filed a Complaint in federal court.  Dkt. No. 1, Compl. (Federal).  The Complaint contained numerous causes of action for medical malpractice, negligence, violation of Medicare as well as state law regulations, a violation of 42 U.S.C. § 1983, and a civil RICO violation.  *See* Compl., *generally*.  St. Peter's Hospital of the City of Albany, St. Peter's Nursing and Rehabilitation Center, Inc., Trinity Health Corporation, and St. Peter's Health Partners, ("St. Peter's Defendants") answered the Complaint and denied the allegations.  Dkt. No. 6.  The remaining Defendants, Dr. Daniel Kredentser and Women's Cancer Care Associates, LLC, indicated their desire to make a motion to dismiss the Complaint. Dkt. No. 4.  Plaintiffs then sought permission to file an amended complaint, which was granted by the Court on February 9, 2018.  Dkt. Nos. 8 & 15.

The Amended Complaint, now the operative pleading, is fifty-five pages in length, contains 166 paragraphs, and asserts both federal and state law claims.  Am. Compl. (Federal).  In particular, after reciting the history of Joyce Savage's treatment for, and death from, cancer, detailing the dispute regarding medical treatment records, reciting various federal and state regulations, and copying verbatim sections of St. Peter's Hospital's bylaws and policies, Plaintiffs asserted the following seven causes of action:

(1)    A claim for reckless disregard/willful misconduct/medical malpractice and violations of the Federal Patient Bill of Rights and HIPAA. This claim relates back to events that occurred in August 2011, and the

failure of Defendants to create, maintain, and produce appropriate medical records;

(2)    A claim for violation of Medicare regulations (42 CFR 482.12, *et seq.*);

(3)    A claim for negligence under New York law for the alleged failure to follow federal mandates;

(4)    A claim under 42 U.S.C. § 1983;

(5)    A claim of respondeat superior and/or vicarious liability for failure to provide decedent with proper medical care;

(6)    A claim against the St. Peter's Defendants for allegedly negligently credentialing Dr. Kredentser; and

(7)    A civil RICO claim based upon the St. Peter's Defendants' receipt of Medicare funds while engaged in a pattern of fraudulent racketeering activity.

Am. Compl. (Federal) at ¶¶ 142-66.

In a somewhat unusual twist, within hours of filing of the Amended Complaint, Plaintiffs filed a Notice of Voluntary Dismissal without prejudice, of the entire action. Dkt. No. 17. That Notice of Dismissal was ultimately determined to be effective as to Defendants Kredentser and Women's Cancer Care Associates, LLC, who had not yet filed an answer, but ineffective as to the St. Peter's Defendants. *See* Dkt. Nos. 17, 21, & 27. As a result, Dr. Kredentser and Women's Cancer Care Associates, LLC have been terminated from the action. Dkt. No. 27. The remaining Defendants have now moved to dismiss the Amended Complaint. Dkt. No. 28.

Rather than consent to the Motion to Dismiss, Plaintiffs have opposed it and seek permission to file a Second Amended and Supplemental Complaint. Dkt. Nos. 33 & 34. This Proposed Second Amended Complaint is seventy-four pages in length, omits reference to Dr. Kredentser and Women's Cancer Care Associates, LLC, omits any claim under 42 U.S.C. § 1983, and adds further facts regarding the discovery disputes in the State Court

action, including a pending spoliation motion and an issue regarding an affidavit filed by Defendants that Plaintiffs believe to be perjurious.  Dkt. 33-1, Prop. Sec. Am. Compl. (Federal).  The proposed pleading sets forth the following ten causes of action:

(1)    A claim for reckless disregard and willful and fraudulent misconduct, arising out of the violation of state law and state regulations, including HIPAA, relating to the creation, maintenance, and production of complete medical records;

(2)    A claim for negligence per se and gross negligence, based on the violation of federal and state mandates, including Medicare regulations and state HIPAA laws;

(3)    Fraudulent concealment;

(4)    Fraud on the court premised upon a violation of New York State Judiciary Law and the Civil Practice Law and Rules;

(5)    A claim for respondeat superior and/or vicarious liability;

(6)    A claim for negligent credentialing of Dr. Kredentser;

(7)    A claim for mail and wire fraud;

(8)    A claim for breach of fiduciary duty;

(9)    A civil RICO claim; and

(10)   A claim for estoppel.

*Id*. at ¶¶ 163-94.

Both the Amended Complaint and the Proposed Second Amended and Supplemental Complaint assert that this Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1357 (injuries under federal laws).  Am. Compl. (Federal) at ¶ 12; Prop. Sec. Am. Compl. (Federal) at ¶ 10.  Plaintiffs' right of action is said to arise under New York common law and state regulations, 42 U.S.C. § 1983 and 18 U.S.C. §§ 1961, *et seq*.  Am. Compl. (Federal) at ¶ 15; Prop. Sec. Am. Compl. (Federal) at ¶ 13 (but omitting reference to § 1983).  A claim of diversity jurisdiction is also asserted.  Prop. Sec. Am. Compl. (Federal) at ¶ 11.

## II.  DISCUSSION

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint.  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47).  However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "It must

also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id*.

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in

D J S

spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiffs' Amended Complaint and their claims under § 1983, RICO, and state law.

### B.  42 U.S.C. § 1983

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In this case, both of these critical elements are missing: Plaintiffs have not identified any federal law that creates rights enforceable under § 1983, nor have they sued a state actor.  Accordingly, and for the reasons that follow, Plaintiffs' § 1983 claim fails.

#### 1.  Enforceable Right

##### a.  HIPAA

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") was enacted by Congress in order to protect against unwarranted disclosure of health records and

information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon*, 2006 WL 2811821, at \*5 (N.D.N.Y. Sept. 28, 2006). Pursuant to the regulations, an individual who feels that a covered entity has not complied with HIPAA may make a complaint to the Secretary, who will then conduct an investigation and take what he or she determines to be necessary action, which may include the imposition of civil penalties. 45 C.F.R. §§ 160.306 & 160.312. Because enforcement is left to the Secretary, the Circuits that have considered the issue agree that HIPAA creates no private right of action. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010); *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 570-71 (5th Cir. 2006); *see also Coon v. Burkly*, 2014 WL 1976669, at \*8 (N.D.N.Y. May 15, 2014) (collecting cases across multiple circuits and district courts); *and Bond v. Connecticut Bd. of Nursing*, 622 Fed. Appx. 43, 44 (2d Cir. 2015) ("It is doubtful that HIPAA provides a private cause of action at all . . ."). Courts presented with the issue have also held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983. *O'Neil v. Bebee*, 2010 WL 502948, at \*9 n. 17 (N.D.N.Y. Feb. 10, 2010). Accordingly, the Court finds that any alleged HIPAA violation is not a proper basis for Plaintiffs' § 1983 claim and this claim is subject to dismissal as a matter of law.

### b. *Medicare/Medicaid Regulations*

A similar impediment exists regarding Plaintiffs' § 1983 claims predicated on a violation of Medicaid/Medicare standards. Enacted in 1965 as Title XIX of the Social

Security Act, 42 U.S.C. § 1396 *et seq*., the Medicaid Act is a cooperative federal-state program designed to provide medical assistance to persons whose resources are insufficient to meet the costs of their necessary medical care. *Himes v. Shalala*, 999 F.2d 684, 686 (2d Cir. 1993). Although no state is required to participate in Medicaid, states that choose to do so must formulate a plan of administration that complies with both the Medicaid Act and regulations promulgated by HHS. 42 U.S.C. § 1396a; *Lewis v. Thompson*, 252 F.3d 567, 569 (2d Cir. 2001). Once a state plan is approved as complying with all statutory and regulatory requirements, the federal government will subsidize a significant portion of the state's expenditures in administering the program. 42 U.S.C. §§ 1396a(b) & 1396b; *Rodriguez v. City of New York*, 197 F.3d 611, 613 (2d Cir. 1999).

42 C.F.R §§ 482, *et seq*., sets the standards for hospitals' participation in Medicare. *See* 42 C.F.R. § 482.1(2). These regulations serve as the basis of survey activities for the purpose of determining whether a hospital qualifies for a provider agreement under Medicare and Medicaid. *Id.* at § 482.1(b). As part of their claim, Plaintiffs point to 42 C.F.R. § 482.24, which conditions participation of hospitals in Medicare and Medicaid on certain standards for the completion, filing, and retrieval of medical records. Plaintiffs allege that in the case of Mrs Savage, proper medical records were not made, or if created, have not been timely produced, and that this failure has resulted in damage to the estate.

As the Supreme Court has noted, however, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). Rather,

Plaintiffs have the burden to establish that the Federal law upon which they rely is one that is enforceable under § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002). "We made clear that unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." *Id.* In a factually similar situation, for example, this Court previously held that the Federal Nursing Home Reform Act, with its performance "yardsticks," did not create a private right of action enforceable under § 1983, as FNHRA lacked rights-creating language, and its purpose was not to benefit a particular person but to improve quality so that nursing homes could be certified for providing services; if they failed, sanctions could be imposed, consistent with the chief components of a typical funding statute. *Baum v. Northern Dutchess Hosp.*, 764 F. Supp. 2d 410 (N.D.N.Y. 2011). For identical reasons, the federal Medicare and Medicaid regulations regarding standards for medical records and care create no explicit private right of action in favor of an individual patient, and leave the remedy for any deficiency in care or record keeping with the Secretary of HHS, who has sole responsibility for promulgating federal health, safety and quality standards applicable to hospitals participating in Medicare/Medicaid programs. 42 U.S.C. §§ 1395cc(b)(2) & 1395x(e)(9).

Therefore, while certain sections of the Medicare and Medicaid provisions do create privately enforceable rights,[2] the provisions that Plaintiffs rely upon in this case do not.

---

[2]  For example, courts have recognized a right of action under § 1983 based upon the prompt payment provisions of the Medicaid Statute, *Rio Grande Cmty. Health Ctr., Inc. v. Rullan,* 397 F.3d 56, 74 (1st Cir. 2005) (the (continued...)

*Evelyn V. v. Kings Cty. Hosp. Ctr.*, 956 F. Supp. 288, 298 (E.D.N.Y. 1997) (plaintiffs have

no federal right to state enforcement of state standards of health care at hospitals participating

in the Medicaid program); *Lorah v. Christiana Care Hosp.*, 2017 WL 3396448, at *3 (D.

Del. Aug. 8, 2017) ("Plaintiff seems to allege violations of 42 C.F.R. § 482.24(c). This

federal regulation does not provide Plaintiff with a private right of action. Instead, it is a

Medicare condition of participation regulation that provides medical record services

guidance. . . . Plaintiff's claim is frivolous and will be dismissed[.]") (citing *Baklid–Kunz

v. Halifax Hosp. Med. Ctr.*, 2014 WL 2968251, at *7 n.5 (M.D. Fla. July 1, 2014)). *See also*,

*Abner v. Mobile Infirmary Hosp.*, 149 Fed. Appx. 857, 858 (11th Cir. 2005) (the Medicare

Act does not create a private right of action for negligence).

Plaintiffs' Section 1983 claim, to the extent it is premised on Medicare and Medicaid

regulations, is dismissed.

## 2. *State Action*

Even if Plaintiffs could point to some enforceable federal right, their § 1983 claim

would still fail due to the absence of state action. As a principle of constitutional law, private

conduct is generally beyond the reach of 42 U.S.C. § 1983. *Flagg Brothers, Inc. v. Brooks*,

436 U.S. 149, 156 (1978) (as a matter of substantive constitutional law, the state-action

---

[2](...continued)
precise language at issue, that the state plan "shall provide for payment to the center . . . by the State of a supplemental
payment," 42 U.S.C. § 1396a(bb)(5)(A), is rights-creating language because it is mandatory and has a clear focus on the
benefitted FQHCs, rather than on the regulated states."), as well as a right to a fair hearing, *Fishman v. Daines*, 743 F. Supp.
2d 127, 132 (E.D.N.Y. 2010).

requirement reflects judicial recognition of the fact that "most rights secured by the Constitution are protected only against infringement by governments."). There is no allegation in the Amended Complaint that Defendants are state actors, nor could there be, as the entities involved are a private hospital, a private rehabilitation center, and private companies. Further, the definition of action taken under color of law generally requires that the defendant in a 1983 case exercise power possessed by virtue of state law. *E.g.*, *Monroe v. Pape*, 365 U.S. 167 (1961) (overruled on other grounds by *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978)). Here, Plaintiffs do not allege that, acting in conformance with state law, Defendants violated some federally created right. Indeed, the heart of the allegation is that Defendants *did not comply* with established rules and regulations. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982) (finding the complaint failed to state a claim under Section 1983 because "the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State.").

Plaintiffs' counsel has asserted to the Court that the hospital and its affiliates are appropriate Defendants in such a civil rights action, because they potentially receive state funding and are licensed pursuant to state statutes that they must comply with to operate, and that they are therefore state actors. Dkt. No. 35-2 at p. 5. However, "a private entity does not become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government. Rather, there must be such a close nexus between the state and the challenged action that the state is responsible for the

specific conduct of which the plaintiff complains." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation, brackets, emphasis, and internal quotation marks omitted); *see also Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) ("For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted)).

Plaintiffs' counsel's argument, made during the February 9, 2018 conference, that Defendants were state actors because they received extensive medicaid funding, Dkt. No. 35-2 at pp. 4-5, is a proposition that was rejected by the Supreme Court over thirty-five years ago. *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business."). *See also*, *Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 430 (N.D.N.Y. 2011) ("Our Circuit has [held] . . . that 'private actors and institutions, such as the hospitals, nursing home[s], and cemeter[ies] . . . are generally not proper § 1983 defendants because they do not act under color of state law,' and the power of the State to license such institution 'does not transform a private party's actions into state action.'") (citations omitted). As Plaintiffs cannot satisfy the fundamental state action requirement, their § 1983 claim is subject to dismissal for this alternative reason.

### C. RICO

As noted above, Plaintiffs' § 1983 claim predicated on violations of either HIPAA or the Medicare/Medicaid regulations is devoid of merit. Plaintiffs' claim that Defendants allegedly violated provisions of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 *et seq.*, therefore, is the sole remaining basis for federal question jurisdiction in this action. A close review of the alleged civil RICO claim also discloses that it is legally deficient and subject to immediate dismissal.

As recently noted by the Second Circuit, "[t]o establish a RICO claim, a plaintiff must show: (1) a violation of . . . 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). To establish a violation of section 1962, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity," in turn, is defined to include any "act" indictable under various specified federal statutes, including the mail and wire fraud statutes and the obstruction of justice statute. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include offenses indictable under 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), and 1503 (relating to obstruction of justice)). A "pattern of racketeering activity" is defined by the statute as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5).

Courts generally approach RICO claims with a cautious eye, and with the

understanding that Congress' goal in enacting RICO was to prevent legitimate businesses from becoming infiltrated by organized crime. *See United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Schmidt v. Fleet Bank*, 16 F. Supp.2d 340, 346 (S.D.N.Y. 1998) (internal quotation marks omitted).

The allegations in the Amended Complaint and the Proposed Second Amended and Supplemental Complaint fail for several reasons. First, those allegations do not allege fraud with particularity, as required by Rule 9(b). FED. R. CIV. P. 9(b); *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing complaint that failed to allege how misrepresentations furthered the fraudulent scheme). Indeed, one could appropriately view Plaintiffs' RICO claim and its racketeering allegations simply as an attempted end-run around the fact that Medicare and HIPAA do not allow for a private right of action. Second, the pleadings also do not satisfy the injury or standing requirements of the RICO statute. *Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 288-89 (3d Cir. 1996) (plaintiff did not have standing to pursue a claim for alleged racketeering relating to falsification of Medicare and Medicaid filings, as he was not a direct victim).

Third, and most fundamental, this case is not about RICO at all, but simply about document production in a civil suit. Plaintiffs are attempting to convert a contentious, but not uncommon, discovery dispute—a dispute that is being handled with great skill and

efficiency by the state court judge—into a federal racketeering claim.  Those discovery issues, however, do not occupy the same area of concern that forms the heart of racketeering law, and to allow such a dispute to degenerate into a parallel federal litigation would be, in this Court's view, both unjustified and unwise.

This principle was recently articulated by the Second Circuit in the case of *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018).  The *Kim* plaintiff was a restaurant owner and also a defendant in a trademark infringement suit.  After the trademark case was dismissed at the summary judgment stage, the plaintiff sued his opponent under RICO, alleging that the initial lawsuit was simply an extortion attempt.  *Id.* at 101.  The plaintiff further claimed that false legal documents were used to mislead the court, all of which constituted both mail fraud and a pattern of racketeering activity.  *Id.*  The District Court dismissed the lawsuit for failure to state a claim, noting that conduct during the course of litigation cannot constitute predicate acts for purposes of RICO.  *Id.* at 99.  The Second Circuit affirmed, concluding that "the allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act."  *Id.* at 104.  The Second Circuit further set forth the following basis for this ruling:

> [T]here are compelling policy arguments supporting this rule. First, "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action," which "would inundate the federal courts with procedurally complex RICO pleadings." Dist. Ct. Op. at 10–11, Appellant App'x at 266–67; *see also* Nora F. Engstrom, *Retaliatory RICO and the Puzzle of Fraudulent Claiming*, 115 MICH. L. REV. 639, 696 (2017) (permitting RICO suits based on prior litigation activities would "engender wasteful satellite litigation"). Furthermore, "permitting such claims would erode the principles undergirding the doctrines of res judicata and

collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." Dist. Ct. Op. at 11, Appellant App'x at 267; *see also Gabovitch*, 1995 WL 697319, at *3, 1995 U.S. App. LEXIS 32856 ("In essence, simply by alleging that defendants' litigation stance in the state court case was 'fraudulent,' plaintiff is insisting upon a right to relitigate that entire case in federal court .... The RICO statute obviously was not meant to endorse any such occurrence."). Moreover, endorsing this interpretation of RICO "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" because "any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." Dist. Ct. Op. at 11, Appellant App'x at 267 (quoting *Curtis & Assocs.*, 758 F.Supp.2d at 173); *see also Engel v. CBS, Inc.*, 182 F.3d 124, 129 (2d Cir. 1999) (noting the "strong public policy of open access to the courts for all parties and [the need] to avoid ad infinitum [litigation] with each party claiming that the opponent's previous action was malicious and meritless" (internal quotation marks and citations omitted) (second brackets in original)).

*Id.*

For the reasons cogently summarized in *Kim*, the present RICO allegation, arising out of the state court litigation, fails to set forth a cognizable RICO claim. Defendants' Motion to Dismiss this claim is therefore granted.

### D. Plaintiffs' Remaining Claims

After the dismissal of the 42 U.S.C. § 1983 claim and the civil RICO claim, all of the remaining causes of action are predicated on state law. While Plaintiffs reference federal diversity jurisdiction in the Amended Complaint, Am. Compl. (Federal) at ¶ 13, diversity jurisdiction is clearly lacking here.

For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between any of the following:

(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state . . . ;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

Plaintiffs do not provide any basis on which the Court could find diversity jurisdiction. Plaintiff Howard Savage is a New York resident. Am. Compl. (Federal) at ¶ 1. The Estate representative is deemed to have the citizenship of the decedent, *Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994), and here the decedent was a New York resident. Am. Compl. (Federal) at ¶ 2. Several of the Defendants are identified as New York corporations. *See id.* at ¶¶ 5 & 9. Thus, there is not complete diversity, as required. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) ("Since its enactment, we have interpreted the diversity statute to require 'complete diversity' of citizenship."); *Neat-N-Tidy Co. v. Tradepower (Holdings) Ltd.*, 777 F. Supp. 1153, 1156 (S.D.N.Y. 1991).

Because there is no diversity jurisdiction or subject matter jurisdiction, the Court's consideration of the state law claims must be predicated upon the application of supplemental jurisdiction. A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of § 1367 provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a) (2006).

A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]") (emphasis added); *Osborn v. Haley*, 549 U.S. 225, 245 (2007). But the Supreme Court has given significant guidance on this question when all federal claims are dismissed at the outset of a case. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). In light of that guidance, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### E. Plaintiffs' Motion to Amend

Rule 15 governs amendments and instructs that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). A court may, however, deny "[l]eave . . . if the amendment would be futile." *Krys v. Pigott,* 749 F.3d 117, 134 (2d Cir. 2014). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). For the reasons discussed above, the Motion to file a Second Amended and Supplemental Complaint is denied. In light of the information already provided to the Court, including the civil RICO statement, I do not

believe that Plaintiffs could replead the Complaint to overcome the *Kim* holding, or to cure the other impediments to the federal claims.

### III. CONCLUSION

For the reasons discussed, I hereby dismiss with prejudice Plaintiffs' claim under 42 U.S.C. § 1983, as well as Plaintiffs' RICO claim. I find there is no diversity jurisdiction, and decline to exercise supplemental jurisdiction over the remaining state law claims, and therefore dismiss them without prejudice.

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motion to Dismiss, Dkt. No. 28, is **granted**; and it is further

**ORDERED**, that Plaintiffs' federal law claims are **dismissed with prejudice** and their state law claims are **dismissed without prejudice**; and it is further

**ORDERED**, that Plaintiffs' Cross-Motion to file a Second Amended and Supplemental Complaint, Dkt. No. 34, is hereby **denied**; and it is further

**ORDERED**, that the Clerk is directed to file judgment accordingly and close the file.

**SO ORDERED**.

Date: June 21, 2018
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge